May it please the Court. My name is Heather Fraley, and I represent Appellant James Mikell. I would like to reserve two minutes for rebuttal. The issue in this case is whether the trial court's failure to instruct the jury to draw no adverse inferences from the fact that the case against two of the three co-defendants was resolved in the middle of trial, impinged upon the presumption of innocence, thereby violating Mikell's right to a fair trial under clearly established Federal law. The facts of this case are that near the end of trial, two of the three co-defendants pled guilty. Let me, you know, I think we all know what the background is. What is your contention as to what clearly established Federal law is that applies to this case? Your Honor, there are two Supreme Court cases that we believe establish the clearly established Federal law here. The first is Estelle v. Williams, which holds that the presumption of innocence is a basic component of the right to a fair trial, and also holds that courts must carefully guard against dilution of that presumption. The second and perhaps more relevant case is Carter v. Kentucky, which holds that the trial court has an obligation to remove from the jury's deliberations any influence of unspoken adverse inferences. Those are really broad propositions, counsel. You're telling us that if the Supreme Court, if the Nevada Supreme Court had looked at Estelle and looked at Carter, it would have known it was making a mistake? Yes, Your Honor. And actually What paragraph in those, in those, what would be the relevant paragraph in either of those cases that would have told the Nevada Supreme Court that this was wrong? Well, I can't point to a particular paragraph, Your Honor. What I can tell you is that the facts of Carter v. Kentucky are actually quite similar to the facts of this case. The situation is quite similar. Right? The issue in Carter v. Kentucky was whether the trial court's failure to issue a no-adverse-inference instruction based on the defendant's exercise of his Fifth Amendment right not to testify in some way impinged upon the presumption of innocence and violated the Constitution. And the Supreme Court held there that it did. Now, the scenario in this case is actually quite similar. Just as a jury is likely to infer from a defendant's failure to testify that he might be guilty, so, too, was the jury in McKell's case likely to infer his guilt from the fact that two of the three co-defendants in this case, which clearly alleged that all three defendants acted in concert in carrying out the crimes, would have What should the trial court have done? The trial court ought to have issued a cautionary instruction. So the problem is not that the trial court told the jury that the case against the co-defendants had been resolved.  Indeed, Your Honor. The court did need to say something about it, because the jury would inevitably have noticed the fact that the two co-defendants were missing. The problem in this case is the failure to issue a cautionary instruction. And that's where the holding of Carter v. Kentucky, we believe, controls. Because, again, it's similar concerns, right? The jury is equally as likely to infer guilt from the absence of two of the three co-defendants as it was in Carter from the fact that the defendant exercised his right not to testify. Now, the jury was particularly likely to use the fact of the disappearance of the two co-defendants against Mr. McKell based on the instructions that were given to it. Jury instruction number three outlined the charges against the defendant, which included an allegation that all of the co-defendants aided and abetted one another in committing these crimes. Jury instruction number eight told the jury that if a conspiracy is established, then each member of the conspiracy is responsible and liable for the acts of the other members. Jury instruction number nine told the jury that even whenever there is slight evidence of a conspiracy, the acts of one defendant are considered the acts of all. Jury instruction number 13 told the jury that where one person in a multiple defendant case uses a deadly weapon, all of them may be convicted of using a deadly weapon. Finally, jury instruction 17 specifically invited the jury to speculate, telling the jury, you may draw reasonable inferences from the evidence which you feel are justified in light of common experience. Now, the jury, in light of all of these instructions, was highly likely to infer from the disappearance of the two co-defendants, the fact that their cases had been resolved, that Mr. McKell must be guilty. For example, the jury could have speculated that the State determined that Mr. McKell was the most culpable party and that the two co-defendants were entitled to a favorable plea deal, but that Mr. McKell wasn't. The jury could have speculated that the cases against the co-defendants had been dismissed entirely for similar reasons. Or the jury could have speculated that the co-defendants pled guilty because they knew that they were guilty. And because they were guilty, and this was a case where all of them acted in concert, Mr. McKell also must be guilty. Does the judge in those instructions tell the jury they must consider the guilt of each defendant independently? It does, Your Honor, and the fact that you may find one or more of these defendants guilty should not dictate your verdict as to the other defendants. Indeed, Your Honor, but that one instruction would have been considered with the jury against these other five instructions, encouraging the jury to find Mr. McKell guilty based on the actions of the co-defendants. And it's important to note that Mr. McKell and his co-defendants weren't even charged with conspiracy, and the defense counsel objected to the conspiracy instructions, but the trial court nonetheless gave them. In addition to the giving of the instructions, the prosecution emphasized the conspiracy aspect in their closing argument. In fact, the prosecution specifically told the jury the act of one is the act of all. The prosecution also argued, gave the jury an example of a bank job where one guy is outside the bank and specifically tells the jury that even the guy outside the bank is as guilty as the guys inside, that's the law of conspiracy. So the failure to give a cautionary instruction in and of itself invited the jury to speculate just like that. And that's what the jury would have the trial judge say, and at what point? Your Honor, I don't think it would make a real difference whether there was a cautionary instruction given at the moment that the court told the jury that the co-defendants were gone, or if the instruction had been given at the end. The problem is that the jury was never told to draw no adverse inferences from the absence of these two co-defendants. And that's basically what the judge should have told the jury, is that you are not to speculate as to how the case against the co-defendants was resolved, nor are you to use that fact in any way against Mr. McKell. And it's the failure to give that cautionary instruction that was prejudicial. And that trial judge had some guidance from the Supreme Court of the United States that he was required to give that instruction? Yes, Your Honor, I believe so. Based on the Supreme Court's decision in Estelle that holds that courts have an obligation to guard against dilution of the presumption of innocence, the absence of the two of the three co-defendants would have potentially diluted the presumption of innocence. In addition, as I've explained, the facts of Carter v. Kentucky are actually quite similar. Carter v. Kentucky says that while no judge can prevent jurors from speculating, a judge can and must use the unique power of the jury instruction to reduce that speculation to a minimum. Here, the trial judge did nothing, nothing, to account for the speculation that was inevitable. Our decision in Washaba is wrong, and in light of Carter v. Kentucky, we should overrule it? I don't at all think that the decision in Washaba was wrong. This Court held in Washaba that there was no error where a cautionary instruction was given. Was one requested in this trial? Your Honor, admittedly, trial counsel did not request an instruction in this case, but I have two responses to that. First, the record is pretty clear that trial counsel's representation in this case was willfully inadequate. He was appointed to represent Mr. McKell a week before trial. He met with Mr. McKell one time before trial started. He admitted at the evidentiary hearing during state post-conviction that he didn't make no attempts to investigate anything. He didn't present any witnesses. He didn't make an opening statement. His closing statement was about two pages long. His cross-examinations were willfully inadequate. So one response is that trial counsel's representation was ineffective. In addition, Mr. McKell himself expressed concerns. The moment that the judge told him that the two co-defendants had pled guilty, he expressed concerns to the trial court about what the jury might infer from that fact. And the judge just simply told Mr. McKell that the evidence against the co-defendants is evidence against you, and the jury may properly consider it. So we believe that this clearly was an error in Washaba, that there was an instruction given. Your Honor, this Court in Washaba held, and I quote, "...informing the jury that such pleas have been entered is not ordinarily erroneous, where, as here, number one, the statement is unadorned and accurate, and number two, the jury is carefully instructed not to consider the plea in determining the guilt or innocence of the remaining defendants." So the reason that this Court found that there was no error was based in large part on the fact that the jury was given a cautionary instruction. That's precisely the problem in Mr. McKell's case. There was no cautionary instruction given. There was nothing to rein in the jury's speculation about what it meant that two of the three co-defendants had pled guilty in the middle of trial. Your Honor, I see that my time is coming to a close. I'd like to reserve the rest for rebuttal. Roberts. Thank you. May it please the Court, and good morning, Your Honors. My name is Jeffrey Conner. I'm a Deputy Attorney General from the State of Nevada. On behalf of the Respondents, this Court should affirm the District Court's finding that ground one of Mr. Michael's petition is both unexhausted and plainly without merit. First and foremost, the claim that Mr. Michael presented in State Court was simply a claim that the trial court erred in not providing a limiting instruction with respect to the absence of his two co-defendants midway through trial. The cases cited by Mr. Michael did cite Federal case law in his State Appellate brief, and the Nevada Supreme Court did cite Federal case law in deciding the issue. However, none of the cases that he cited in his brief or the cases cited by the Nevada Supreme Court expressly discussed any provision of the United States Constitution. Now, furthermore, on that point, counsel is now presenting this claim under Carter v. Kentucky and Estelle v. Williams. Those cases weren't addressed by the Nevada Supreme Court. They weren't cited to in front of the Nevada Supreme Court. The claim that's being presented in this Court is clearly unexhausted at this point. And that's important because the fact that the claim is unexhausted means this Court cannot grant relief. When you say unexhausted, even though, well, the general issue was raised, the defendant in State Court cited the wrong cases? Is that what you're saying? Well, he cited – essentially, he quoted a provision of what looked to be a Federal criminal treatise that discussed some Federal cases discussing this issue. However, a review of those cases shows that those cases were criminal – Federal criminal prosecutions where the appellate court was acting in its supervisory capacity over a Federal criminal proceeding. And so because those cases did not discuss and express provision of the Constitution, this claim was not presented – fairly presented to the Nevada Supreme Court as a violation of the Federal Constitution. So he cited the wrong cases. All right. That's correct, Your Honor. Let me pass and ask you to respond to Ms. Fraley's argument that – I think she said that at least Carter v. Kentucky can serve as clearly established Federal law in this case. My reading of Carter v. Kentucky is somewhat different than the Petitioner's. I believe, if my recollection is correct, in Carter v. Kentucky, the Supreme Court made a distinction there that what they were addressing was not the burden of proof on the State, but that the failure to give an instruction addressing a defendant's decision not to testify at trial implicates his right to not incriminate himself under the Fifth Amendment. So Carter v. Kentucky dealt with a completely different issue than what's addressed in this case. Furthermore, the Nevada Supreme Court cited United States v. Jones, which is a case from this Court, where the trial court expressly informed the jury that the defendant had pled guilty, the co-defendant pled guilty, and the remaining co-defendant went on through trial. He was convicted. He appealed that issue to this Court, and this Court denied relief. And the same happened in Osborne v. United States, which is a case that's almost directly on point with this case, where, as the Court noted, jury instruction number five in this case is almost a verbatim instruction of what was given with respect to the fact that each defendant has to – that the jury has to determine the guilt of each defendant individually with respect to the State's burden of proof of proving every element of the offense beyond a reasonable doubt. I think in this case, even under this Court's case law, which the United States Supreme Court has not addressed this issue. It's clear that habeas relief is simply not available. Unless there's any further questions from the Court, I think that concludes my presentation, and the Respondents respectfully request that this Court affirm the district court's finding that round one of the petition is both unexhausted and plainly without merit. Thank you. Thank you, counsel.  As the State points out, Federal cases were cited by both Mr. McKell and by the Nevada Supreme Court. But those – I think he's correct, isn't he, that those cases aren't, you know, discussing constitutional rights, but there are Federal, you might say, you know, supervisory cases of Federal criminal procedure? Your Honor, they are all direct appeal cases from Federal prosecutions. However, four of the cases cited by the Nevada Supreme Court specifically reference the right to a fair trial, the right to an impartial jury, the substantive rights of the accused, and the substantial rights of the accused. In a Federal prosecution – Was that Carter v. Kentucky? Indeed, Your Honor. That case does also discuss the right to a fair trial, and the presumption is – Was Carter v. Kentucky cited in the brief? Oh, no, Your Honor. Carter v. Kentucky was not cited. But these Federal cases discussing the right to a fair trial are from Federal prosecutions. And the right to a fair trial in a Federal prosecution emanates from the Federal Constitution. Therefore, the Nevada Supreme Court cast on a Federal issue when it decided the case based on the right to a fair trial that emanated from the Federal Constitution. Furthermore, the State should be estopped from arguing now that the claim is unexhausted based on its argument in the State postconviction proceedings that the claim raised in State postconviction, which the State concedes in its answering brief, was Federalized. There's no question that the claim raised on State postconviction was Federalized. The State argued that that Federal claim was barred by the doctrine of law of the case because it had been raised on direct appeal. So because the State argued on State postconviction that the claim had already been raised, it should be estopped from now asserting that the claim is unexhausted. As to the issue of clearly established Federal law, it is – it is absolutely accurate that the Nevada Supreme Court did not cite to Estelle or Carter. However, neither this Court's cases nor the Supreme Court's cases require that the State Supreme Court cite to the Federal case. The law holds to the contrary that failure to cite to a case is not dispositive. Furthermore, Johnson v. Williams pretty much creates a presumption that a Federal question is addressed when a State supreme court addresses an issue. So for those reasons, it doesn't matter that the Court didn't cite to Carter. Third, as to this issue of whether the standard is general, Marshall v. Rogers, which was decided two months ago by the Supreme Court, specifically holds that a general standard from Supreme Court cases can supply clearly established Federal law. The Court in Panetti v. Quarterman held that the EDPA does not require an identical fact pattern before a legal rule must be applied. The Supreme Court held in Yarborough v. Alvarado that some rules are general but may still be clearly established. This Court held in Robinson v. Ignatiu that rules are designed to evaluate myriad factual contexts and novel situations may be dictated by Supreme Court precedent. So we believe that Carter v. Kentucky is sufficiently analogous that the pronouncement of that case, that trial courts have an obligation to minimize the impact of adverse inferences that the jury may draw, controls this case, and entitles Mr. McHale to relief. Thank you. Roberts. Thank you. We thank both counsel for the argument. The Court is going to take a 10-minute recess and then we'll return.
judges: Stafford, Tashima, Bybee